UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNIE LEN BULLOCK,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PCL INDUSTRIAL SERVICES, INC.,<br><br>　　　　　Defendant. | 1:13-cv-01233-LJO-JLT<br><br>**ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO WAIVE ORAL ARGUMENT**<br>(Docs. 9, 14) |

## I. INTRODUCTION

Pro se plaintiff Bennie Len Bullock ("Mr. Bullock") brings this Title VII action against his former employer PCL Industrial Services, Inc. ("PCL"). Mr. Bullock alleges that PCL terminated him based on his race. Pending before the Court is PCL's motion to dismiss Mr. Bullock's complaint without leave to amend. For the reasons discussed below, this Court GRANTS PCL's motion to dismiss with leave to amend.

## II. BACKGROUND

**A. Facts**[1]

Mr. Bullock is African American. He was previously employed by PCL as "fire watch" and performed his job in a satisfactory manner.

---

[1] The background facts are derived from the complaint and the documents attached to the complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment") (internal quotation marks omitted). The Court accepts the factual allegations in the complaint as true for purposes of this motion. *See Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

On January 22, 2012, Mr. Bullock was at his fire watch post when the Safety Representative for PCL's client approached him. The Safety Representative asked Mr. Bullock for the "Job Hazard Analysis" ("JHA"). The Safety Representative reviewed the JHA and asked Mr. Bullock who filled it out. Mr. Bullock told the Safety Representative that the document was filled out by Mary, a member of the crew. The Safety Representative told Mr. Bullock that he wanted the wording to be more specific and asked Mr. Bullock to convey this information to the crew during the 7:00 a.m. safety meeting the following day. The Safety Representative then approached the Superintendent and threatened to shut down the jobsite if the JHA was not filled out properly. After this discussion, the Superintendent held an immediate meeting regarding the JHA.

The following day, at the 7:00 a.m. safety meeting, the JHA was discussed again. When Mr. Bullock tried to convey the message that the wording in the JHA needed to be more specific, he was rebuffed by the Foreman, Carlyse Gibson, ("Foreman Gibson") and members of his crew. Although Foreman Gibson and his crew rebuffed Mr. Bullock's attempts to speak, the "foreign nationals and Mexicans" were allowed to give input two or three times.

Later that day, Mr. Bullock approached Foreman Gibson and stated in a normal tone, "You are the leader." Foreman Gibson interrupted Mr. Bullock and stated, "Don't talk to me in that manner and go see the Superintendent." Mr. Bullock was then terminated from his position with PCL. Mr. Bullock alleges that he was terminated for refusing to sign a false misconduct form written by Foreman Gibson which stated that Mr. Bullock threatened him. Mr. Bullock was given a letter of termination which provides that he was terminated because he was "not a good cultural fit for PCL."

In February 2012, Mr. Bullock entered into a separation agreement with PCL. In the agreement, PCL agreed to pay Mr. Bullock $10,000 provided that Mr. Bullock terminate his employment relationship with PCL effective January 23, 2012. Mr. Bullock also agreed to release "any and all" Title VII claims against PCL arising out of his employment or the termination of his employment. Mr. Bullock entered into the agreement because his letter of termination stated that he was "not a good cultural fit for PCL" and because human resources informed him that the agreement would not affect his unemployment benefits.

After signing the release, Mr. Bullock applied for unemployment benefits in the state of Texas.

On February 23, 2012, the Texas Workforce Commission ("Commission") requested information from PCL regarding Mr. Bullock's request for benefits. In response, PCL provided a modified termination letter which states that Mr. Bullock was terminated because he was "not a good cultural fit for PCL due to insubordinate behavior with a supervisor." As a result of the letter, Mr. Bullock was denied unemployment benefits.

**B. Procedural History**

On July 9, 2012, Mr. Bullock filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[2] In Mr. Bullock's EEOC charge, he alleged discrimination based on race and that he was discharged because he was told that he was not a "cultural fit." On May 31, 2013, the EEOC determined that based on its investigation it was unable to conclude whether a statutory violation occurred and issued a right to sue letter.

On August 8, 2013, Mr. Bullock filed a pro se complaint against PCL with this Court. The Court screened the complaint and dismissed it with leave to amend for failure to allege sufficient facts. On September 19, 2013, Mr. Bullock filed an amended complaint. This Court screened the amended complaint and determined that Mr. Bullock stated a cognizable claim for disparate treatment, in violation of Title VII. Mr. Bullock alleges that PCL terminated him based on his race, in violation of Title VII.

Pending before the Court is PCL's motion to dismiss Mr. Bullocks' amended complaint without leave to amend. PCL contends that Mr. Bullock's Title VII claim is barred by the release in his separation agreement. Mr. Bullock filed an untimely opposition to the motion to which PCL has replied. This Court VACATES the February 18, 2014, hearing or oral argument, pursuant to Local Rule 230(g). Having considered the arguments presented and the relevant law, this Court issues this order.

### III. LEGAL STANDARD

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) is a challenge to the sufficiency of

---

[2] PCL submitted the EEOC charge in support of its motion to dismiss. The Court incorporates this document by reference into the complaint for purposes of deciding this motion. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) ("courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading") (internal quotation marks omitted).

3

the allegations set forth in the complaint. A FED. R. CIV. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a FED. R. CIV. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Serv. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain

recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend.  *Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. DISCUSSION

**A. Contractual Release**

PCL contends that Mr. Bullock's Title VII claim is barred by the release in his separation agreement.

"The interpretation and validity of a release of claims under Title VII is governed by federal law." *Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 461 (9th Cir. 1989).  A release is valid so long as it was "voluntary, deliberate and informed." *Id.* at 462 (quoting *Salmeron v. United States*, 724 F.2d 1357, 1361 (9th Cir. 1983)).  "The determination of whether a waiver of Title VII was voluntary, deliberate, and informed is predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed." *Id.* (internal quotation marks omitted).  Specifically, Courts analyze the lack of ambiguity in the agreement, the plaintiff's education and business experience, the presence of a noncoercive atmosphere for the execution of the release, and whether the employee had the benefit of legal counsel.  *Id.*

Here, it is unclear whether the release is valid.  The agreement at issue unambiguously indicates that Mr. Bullock intended to waive any and all claims arising under Title VII.[3]  In addition, Mr. Bullock's certification in construction project management and safety leads this Court to conclude that he possessed the education and skills necessary to understand that when he signed the agreement

---

[3] Paragraph three of the agreement provides:
> Employee agrees that any and all claims or obligations, whether known or unknown at the present time, including any claim for violation of civil rights, or any other state or federal statute which Employee may have against any person or party . . . arising out of Employee's employment with Employer or the termination of that employment . . . are fully and completely settled and all liability or potential liability for any such claim is hereby released. This agreement to waive claims specifically includes all claims, including claims of discrimination based on race . . . which Employee may have under the terms of Title VII of the Civil Rights Act of 1964 . . .

(Doc. 4, p. 7)

5

he waived all Title VII claims arising out of the termination of his employment. Moreover, the agreement advised Mr. Bullock to seek legal counsel and gave him seven days to do so. (Doc. 4, p. 8 ¶ 6). However, whether the release was executed in a noncoercive fashion is an open question.

In Mr. Bullock's complaint, he asserts that the settlement agreement was induced by fraud because PCL modified the original letter of termination after he signed the settlement agreement. Mr. Bullock explains that he would not have entered into the settlement agreement had he known that PCL was going to modify his letter of termination because he was denied unemployment benefits as a result of the modification. The original termination letter provided that Mr. Bullock was terminated because he was "not a cultural fit for PCL." (Doc. 4, p. 9). The modified termination letter provides that Mr. Bullock was terminated because he was "not a cultural fit for PCL due to insubordinate behavior with a supervisor." (Doc. 4, p. 10).

Under California law, a cause of action for fraud requires a plaintiff to establish: (1) a knowingly false misrepresentation by the defendant, (2) made with the intent to deceive or to induce reliance by the plaintiff, (3) justifiable reliance by the plaintiff, and (4) resulting damages. *Service by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1816 (1996). Fraud in the inducement is a subset of fraud. It occurs when "the promisor knows what he is signing but his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is *voidable*." *Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996) (internal quotation marks omitted) (emphasis in original). Allegations of fraud must be pled with particularity. FED. R. CIV. P. 9(b). This includes "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citations omitted).

Mr. Bullock fails to satisfy the heightened pleading requirement of Rule 9(b). Mr. Bullock fails to allege who was responsible for the alleged fraud at PCL. He also fails to allege that the person responsible for the fraud knowingly made false representations about the termination letter and Mr. Bullock's unemployment benefits when Mr. Bullock entered into the settlement agreement. In addition, Mr. Bullock fails to allege that the person responsible for the fraud intended to induce reliance by Mr. Bullock by making false representations about the termination letter and Mr. Bullock's

unemployment benefits. Accordingly, Mr. Bullock's fraud allegation fails to satisfy Rule 9(b)'s particularity requirement. Therefore, this Court cannot determine whether the release in the parties' separation agreement is valid. Mr. Bullock will have one opportunity to amend his claim. *See Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (recognizing that to the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend).

**B. Plaintiff's Admissions**

PCL contends that even if Mr. Bullock's fraud allegations were adequately pled, his own admissions undermine his claim. PCL argues that Mr. Bullock's fraud claim is undermined by the fact that on February 15, 2012, Mr. Bullock admitted to the Commission that he was terminated for being insubordinate to Foreman Gibson.[4] (Doc. 11, p. 7). PCL points out that this admission was made prior to the February 23, 2012, change to Mr. Bullock's termination letter. Although the Commission's "Fact Finding" document provides that Mr. Bullock admitted that he was terminated for being insubordinate to Foreman Gibson this does not show what representations were made to Mr. Bullock about his termination letter and unemployment benefits when he entered into the settlement agreement. Accordingly, Mr. Bullock's admissions to the Commission do not undermine his fraud claim.

**C. Ratification**

PCL further asserts that even if there was an irregularity with the release, Mr. Bullock's actions ratified the release.

"Whether . . . a person has ratified a voidable contract . . . depends primarily upon his intention, and this is shown by his declarations, his acts, or his conduct." *Esau v. Briggs*, 89 Cal. App. 2d 427, 438 (1948). "The fundamental test of ratification by conduct is whether the releaser, with full knowledge of the material facts entitling him to rescind, has engaged in some unequivocal conduct giving rise to a reasonable inference that he intended the conduct to amount to ratification." *Union

---

[4] This admission is in a fact finding document from the Commission. Mr. Bullock attached an incomplete version of the document to his complaint. PCL submitted a complete version of the document in support of its motion to dismiss. The Court incorporates the complete version of the document by reference into the complaint for purposes of deciding this motion. *See Davis*, 691 F.3d at 1160 ("courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading") (internal quotation marks omitted).

*Pac. R. Co. v. Zimmer*, 87 Cal. App. 2d 524, 532 (1948).  Whether the releaser has such knowledge or whether retention has been for an unreasonable length of time are normally questions for the trier of fact. *Id*.

PCL contends that Mr. Bullock's actions ratified the release because he had full knowledge of the material facts related to his complaint for 18-months before taking any action to repudiate the release.  PCL further points out that Mr. Bullock kept the $10,000 consideration.  The Court is unpersuaded by PCL's ratification argument because it is unclear as to when Mr. Bullock became aware that his termination letter was modified.  It is clear that Mr. Bullock's termination letter was modified on February 23, 2012.  However, it is unclear as to when Mr. Bullock knew that the letter was modified.  In addition, Mr. Bullock was not completely inactive before filing his complaint with this Court because he filed his EEOC charge on July 9, 2012, and did not receive his right to sue letter until May 31, 2013.  Accordingly, it is unclear at this stage of the proceedings whether Mr. Bullock's actions ratified the release.

**D. Exhaustion**

In PCL's final argument, it contends that Mr. Bullock failed to exhaust his administrative remedies because Mr. Bullock's complaint contains numerous allegations that were not included in his EEOC charge.

In Mr. Bullock's complaint, he alleges that he was terminated based on his race, in violation of Title VII.  He alleges that he was punished for speaking up at a safety meeting by being asked to sign a false misconduct form and when he refused, he was terminated.  He further alleges that individuals from outside his protected class were not asked to sign a misconduct form despite the fact that they spoke up at the safety meeting as well.

In Mr. Bullock's EEOC charge, he alleges that he was discriminated against due to his race and that he was discharged because he was told that he was not a "cultural fit."  Both Mr. Bullock's EEOC charge and complaint relate to the circumstances surrounding the termination of his employment.  Accordingly, the allegations in Mr. Bullock's complaint are "like or reasonably related to" the allegations in his EEOC charge.  *See Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1476 (9th Cir. 1989) ("In determining whether an allegation under Title VII is like or reasonably

1  related to allegations contained in a previous EEOC charge, the court inquires whether the original
2  EEOC investigation would have encompassed the additional charges.").
3       Accordingly, this Court GRANTS PCL's motion to dismiss Mr. Bullock's complaint with leave
4  to amend.

## V. CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. VACATES the February 18, 2014, hearing or oral argument, pursuant to Local Rule 230(g);
2. GRANTS PCL's motion to dismiss Mr. Bullock's first amended complaint with leave to amend; and
3. ORDERS Mr. Bullock to file and serve a second amended complaint, if any, no later than March 13, 2014. The Court gives Mr. Bullock one, and only one, opportunity to amend his complaint. Mr. Bullock's second amended complaint, if any, must be filed in a timely fashion. The Court must receive the amended complaint on March 13, 2014, or the Court will not consider it.
4. ORDERS PCL, no later than April 3, 2014, to file and serve a response to Mr. Bullock's amended complaint, if filed.

IT IS SO ORDERED.

    Dated:  **February 13, 2014**          /s/ Lawrence J. O'Neill
                                                                       UNITED STATES DISTRICT JUDGE