UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNIE LEN BULLOCK,<br><br>        Plaintiff,<br><br>   v.<br><br>PCL INDUSTRIAL SERVICES, INC.,<br><br>        Defendant. | 1:13-cv-01233-LJO-JLT<br><br>**ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br>(Docs. 24) |

## I. INTRODUCTION

Pro se plaintiff Bennie Len Bullock ("Mr. Bullock") brings this action against his former employer PCL Industrial Services, Inc. ("PCL"). Mr. Bullock alleges that PCL fraudulently induced him to sign an agreement of separation. Pending before the Court is PCL's motion to dismiss Mr. Bullock's second amended complaint ("SAC"). For the reasons discussed below, this Court GRANTS PCL's motion to dismiss without leave to amend.

## II. BACKGROUND

**A.**   **Facts**[1]

Mr. Bullock is African American. He was previously employed by PCL as "fire watch" and performed his job in a satisfactory manner.

---

[1] The background facts are derived from the first and second amended complaints and the documents attached thereto. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment") (internal quotation marks omitted). The Court accepts the factual allegations in the complaint as true for purposes of this motion. *See Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Although, generally, amended complaints supersede prior submissions, it appears that Plaintiff assumed his second amended complaint would incorporate the content of the first. To facilitate the analysis herein, the Court has therefore gleaned the background facts from both the first and second amended complaints.

1

On January 22, 2012, Mr. Bullock was at his fire watch post when the Safety Representative for a PCL client approached him asking for the "Job Hazard Analysis" ("JHA"). The Safety Representative reviewed the JHA and ultimately concluded that it failed to provide sufficient details. The Safety Representative told Mr. Bullock that he wanted the wording to be more specific and asked Mr. Bullock to convey this information to the crew during the safety meeting the following day.

The following day at the safety meeting, the JHA was discussed again. When Mr. Bullock tried to convey the message that the wording in the JHA needed to be more specific, he was rebuffed by the Foreman, Carlyse Gibson, ("Foreman Gibson") and members of his crew. Although Foreman Gibson and his crew rebuffed Mr. Bullock's attempts to speak, the "foreign nationals and Mexicans" were allowed to give input two or three times. Doc. 4.

Later that day, Mr. Bullock approached Foreman Gibson and stated, "You are the leader." Foreman Gibson interrupted Mr. Bullock and stated, "Don't talk to me in that manner and go see the Superintendent." Mr. Bullock was then terminated from his position with PCL.

On January 23, 2013, Mr. Bullock called PCL's "Mexican Project Manager," Mr. Joseph Arismendez (Project Manager Arismendez) to inform him that the Superintendent had fired him. Project Manager Arismendez asked Mr. Bullock to attend a meeting at PCL's headquarters in Bakersfield, California. At the meeting, in addition to Project Manager Arismendez and Mr. Bullock, there were two human resource representatives present, both of whom were also of "Mexican" decent. At the beginning of the meeting, Mr. Bullock informed Project Manager Arismendez that he was interested in taking legal action against PCL for wrongful termination. Project Manager Arismendez dissuaded Mr. Bullock from discussing that at the meeting. Mr. Bullock was then presented with an agreement of separation by one of the human resource representatives. The separation agreement stated that Mr. Bullock was being terminated because "he was not a good cultural fit for PCL." Mr. Bullock was told by the human resource specialist present that this separation agreement would not impact Mr. Bullock's unemployment benefits. Doc. 22.

Pursuant to the human resource specialist's advice, Mr. Bullock signed the separation agreement and was provided $10,000 in exchange for releasing PCL of any and all claims, including Title VII claims, arising out of his employment or his termination. The Agreement of Separation states

specifically, "This agreement to waive claims specifically includes all claims, including claims of discrimination based on race, sex, religion, national origin, sexual preference, disability, handicap, or veteran status which Employee may have under the terms of Title VII of the Civil Rights Act of 1964." Doc. 4. p.7.

After signing the release, Mr. Bullock applied for unemployment benefits in the state of Texas. On February 23, 2012, the Texas Workforce Commission ("Commission") requested information from PCL regarding Mr. Bullock's request for benefits. In response, PCL provided the Commission a copy of what it claimed was the separation agreement, which stated that Mr. Bullock was terminated because he was "not a good cultural fit for PCL due to insubordinate behavior with a supervisor." The "due to insubordinate behavior with supervisor" language was handwritten, instead of typed like the rest of the information on the form. At the bottom of the form appears an addition handwritten note which reads, "Note: Error made when preparing form. AG 2-23-12." The additional handwritten comments were signed by the author as well as a witness and dated February 23, 2012. Mr. Bullock and a PCL representative had previously signed the separation agreement on January 23, 2012. As a result of the letter, Mr. Bullock was denied unemployment benefits.

Mr. Bullock calculated that he would have received $10,080 in unemployment had he not signed the separation agreement. Mr. Bullock also asserts that he lost money moving his family to accept the job with PCL. Doc. 27.

**B.   Procedural History**

On July 9, 2012, Mr. Bullock filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[2] In Mr. Bullock's EEOC charge, he alleged discrimination based on race and that he was discharged because he was told that he was not a "cultural fit." On May 31, 2013, the EEOC determined that based on its investigation it was unable to conclude whether a

---

[2] Both Mr. Bullock and PCL submitted EEOC filings in support of their respective submissions to the court. Docs. 11 and 13. The Court considers these documents for purposes of deciding the pending motion pursuant to the incorporation by reference doctrine. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) ("courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading") (internal quotation marks omitted).

statutory violation occurred and issued a right to sue letter. After receiving this letter, Mr. Bullock was again in contact with the EEOC. He sent them a letter and an email requesting reconsideration of his case in June 2013. On July 8, 2013, the EEOC denied Mr. Bullock's reconsideration request and informed him that they would take no further action regarding his matter.

On August 8, 2013, Mr. Bullock filed a pro se complaint against PCL in this Court. Doc. 1. The Court screened the complaint and dismissed it with leave to amend for failure to allege sufficient facts in support of his claims. Doc. 3. On September 19, 2013, Mr. Bullock filed an amended complaint. Doc. 4. On January 17, 2014, PLC filed a motion to dismiss Plaintiff's first amended complaint ("FAC") to which Mr. Bullock responded on January 24, 2014. Docs. 9 and 13. On February 7, 2014, Plaintiff moved to have counsel appointed for him, which motion the court denied on February 11, 2014. Docs. 15 and 16. On February 13, 2014, this Court granted PLC's motion to dismiss with leave to amend. Doc. 20.

On March 12, 2014, Mr. Bullock filed his SAC pro se. Doc. 22. On April 3, 2014 PCL responded with a motion to dismiss. Doc. 23. Mr. Bullock filed his response on May 9, 2014, at which point he also filed a second motion to appoint counsel. Docs. 27 and 28. The Court denied Mr. Bullock's motion to appoint counsel on May 19, 2014. Doc. 31. In light of the Court's decision to deny Mr. Bullock's request for counsel, the Court granted Mr. Bullock additional time to submit an amended opposition to the pending motion to dismiss.

## III. LEGAL STANDARDS

**A.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A federal district court is a court of limited jurisdiction and therefore may only adjudicate those cases authorized by the Constitution or a valid statutory grant of jurisdiction. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)(citation omitted). As the elements of jurisdiction are not merely pleading requirements but an indispensable part of the plaintiff's case, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S.

4

555, 561 (1992). Rule 12(b)(1) permits a motion to dismiss for lack of subject matter jurisdiction.

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) "If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Cervantez v. Sullivan,* 719 F. Supp. 899, 903 (E.D. Cal. 1989), *rev'd on other grounds,* 963 F.2d 229 (9th Cir.1992). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

**B.     Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim[3]**

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts the allegations in the complaint as true; construes the pleading in the light most favorable to the opposing party;, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege enough facts to state a claim of relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "The plausibility standard is not akin to a 'probability requirement,'

---

[3] Although defendant's motion to dismiss the SAC does not itself raise 12(b)(6), in an abundance of caution, the Court herein evaluates Plaintiff's Title VII claim on the merits and therefore applies the 12(b)(6) standard to that analysis.

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

To withstand a 12(b)(6) motion to dismiss, a complaint is not required to a detailed factual allegations, however, it does require that plaintiff plead more than mere labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. 544, 555 (2007). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Serv. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

## IV. DISCUSSION

Federal subject matter jurisdiction can generally arise in one of two ways: (1) the action arises under the Constitution, laws or treaties of the United States and therefore raises a question of federal law, *see* 28 U.S.C. §1331; or (2) the action is between parties of diverse citizenship and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332. In moving to dismiss this action, PCL argues that neither basis is alleged on the face of the SAC. For the reasons set forth below, the Court agrees.

**A.     Federal Question Jurisdiction**

In the FAC, Plaintiff alleged a violation of Title VII, as well as fraud in the inducement of a contract. *See* Doc. 4 at 3. PCL moved to dismiss the Title VII claim, arguing, among other things, that

the claim was barred by the release in Mr. Bullock's separation agreement. *See* Doc. 20 at 5. The Court acknowledged that the FAC suggested that the settlement agreement was induced by fraud because PCL modified the original letter of termination after Mr. Bullock signed the settlement agreement. However, the Court reasoned that Mr. Bullock had not adequately pled the "who, what, when, where, and how" of the fraudulent inducement. *Id.* at 6. Plaintiff was afforded an opportunity to amend. *Id.* at 7.

In the SAC, however, Plaintiff fails to even mention Title VII. Rather, the SAC asserts only facts that relate to Plaintiff's allegation of fraud. "Generally, after an amended pleading has been filed, courts will disregard the original pleading." *Kenworthy v. Brown*, 248 Cal. App. 2d 298, 302, 56 Cal. Rptr. 461, 463 (1967). *See also, Meyer v. State Bd. of Equalization*, 42 Cal. 2d 376, 384, (1954)("It is well established that an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading."); *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981)("It has long been the rule in this circuit that a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."). Therefore, claims which are dismissed are waived if they are not repled in subsequent amended complaints. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012). Without a federal claim, this Court lacks federal question jurisdiction.

      **1.**      <u>**In the Alternative, Plaintiff Fails to State a Title VII Claim**</u>

It is apparent from his papers that Plaintiff believed that his initial complaint would be incorporated into his second amended complaint.[4] Even if the Court construes Plaintiff's SAC as incorporating the allegations of the FAC, Plaintiff still has not plead sufficiently a Title VII claim.

As mentioned above, PCL contends that Mr. Bullock's Title VII claims are barred by the release in his separation agreement. Plaintiff appears to maintain that his separation agreement should be deemed invalid because it was fraudulently altered. Federal claims, as well as the validity of the waiver thereof, including Title VII claims, are governed by federal law. *Stroman v. West Coast Grocery Co.,* 884 F.2d 458, 461 (9th Cir.1989). A waiver of rights however is "closely scrutinize[d]" by the court. *Nilsson v. City of Mesa*, 503 F.3d 947, 951 (9th Cir. 2007). In *Stroman*, the court held,

---

[4] Mr. Bullock in his response to defendant's motion to dismiss the second amended complaint stated that he did not intended to abandon his Title VII claims, however, he once again failed to reallege the facts of his Title VII claim. Doc. 27.

7

> [t]he determination of whether a waiver of [a federal right] was voluntary, deliberate, and informed is predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed[, including] ... [the] clarity and lack of ambiguity of the agreement, ... the plaintiff's education and business experience, ... the presence of a noncoercive atmosphere ..., and whether the employee had the benefit of legal counsel.

*Id*. As this Court found in its prior ruling, Plaintiff's waiver was voluntary, deliberate and informed. Doc. 20 at 5. The type-written portion of the agreement unambiguously indicates Plaintiff's intent to waive his Title VII claims. As the Court previously found, Mr. Bullock possessed the education and skill level necessary to understand the documents he was signing; and he was given the opportunity to seek legal counsel. *Id*. at 5-6. For those reasons, the unaltered, type-written portion of the separation agreement validly waives Mr. Bullock's Title VII claims. Even assuming the truth of Plaintiff's contention that the language of the separation agreement was modified after the fact in a fraudulent manner by way of the handwritten addition, this has no impact on the validity of the original, type-written waiver. Plaintiff has alleged no facts calling into question that he knowingly signed the type-written version of the separation agreement. Accordingly, Plaintiff cannot maintain any Title VII claims in this Court based upon conduct that pre-dated that waiver.

It appears, however, that Plaintiff is attempting to assert a separate Title VII claim based upon the conduct surrounding the modification of the separation agreement with the handwritten additional language. While his preceding waiver would not bar such a claim, Plaintiff fails to state a Title VII claim based upon the alteration conduct. To establish a prima facie case of discrimination in the workplace under Title VII, Plaintiff must demonstrate that he: (1) was a member of a protected class; (2) performed his job in a competent manner; (3) suffered an adverse employment action; and (4) the action occurred under circumstances suggesting discriminatory motive (i.e. person outside of the protected class was treated more favorably). *Gathenji v. Autozoners, LLC*, 703 F. Supp. 2d 1017, 1028 (E.D. Cal. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir.1996)). Here, Plaintiff has failed to present evidence that the alternation occurred under circumstances suggesting a discriminatory motive. Accordingly, Plaintiff fails to state a Title VII claim.

B. **Diversity Jurisdiction**

As mentioned above, on its face the SAC contains only a claim for fraud. In the absence of a federal claim that could form the basis for federal question jurisdiction, Plaintiff's fraud claim could only be cognizable in this Court pursuant to diversity jurisdiction. To invoke diversity jurisdiction, the plaintiff must show both diversity of citizenship and that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Here, Mr. Bullock has not alleged diversity of citizenship, however, he does state that PCL maintains a headquarters in Bakersfield, California.[5] He further states that his own domicile is in Memphis, Tennessee. Therefore, diversity of citizenship exists because each plaintiff is diverse from each defendant. *Indus. Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1092 (9th Cir. 1990).

The amount in controversy, however, does not meet the minimum threshold of $75,000. "Generally, the amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000). Plaintiff claims that the separation agreement deprived him of $80 to which he would have otherwise been entitled due to his unemployment payments plus the cost of moving, which Plaintiff alleges amounts to thousands of dollars. Doc 27 at 2. Plaintiff asserts that the separation agreement entitled him to $10,000, however, had he been given his unemployment he would have received $10,080. The original separation agreement, however, would not have prevented Plaintiff from collecting both the separation agreement and the unemployment. Even if Plaintiff had alleged that he was entitled to both the separation agreement payment and his unemployment, thus increasing his claim to $10,080, as well as the cost of moving, he would not meet the required amount in controversy. "It must appear to a legal certainty that the [plaintiff's] claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). *See also, Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 402 (9th Cir. 1996)("If, from the face of the pleadings, it is apparent, *to a legal certainty,* that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like

---

[5] Businesses have citizenship in their principal place of business as well as the state in which they are incorporated. *Cont'l Motion Pictures v. Allstate Film Co.*, 590 F. Supp. 67, 68 (C.D. Cal. 1984). Here, although Mr. Bullock does not allege that PCL is incorporated in California, he does state that California is PCL's principle place of business.

certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed."). Even if Mr. Bullock claimed that he was owed the entirety of his unemployment, instead of just the difference between his settlement and his unemployment, as well as the expenses of moving, he would not meet the amount in controversy requirement. Therefore, Plaintiff fails to meet the requirements of diversity jurisdiction.

## V. CONCLUSION AND ORDER

In sum, the complaint fails to show on its face that this Court has federal question or diversity jurisdiction over this matter. PCL's motion to dismiss for lack of subject matter jurisdiction is therefore GRANTED. The Clerk of Court is directed to CLOSE THIS CASE.

**SO ORDERED**
**Dated:  June 25, 2014**

                              **/s/ Lawrence J. O'Neill**
                              **United States District Judge**